UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SEDIGHEH MERAJI, et al.,
Plaintiff,
v.
DONALD J TRUMP, et al.,
Defendant.

Case No. CV 25-8886 FMO (PDx)

**ORDER RE: MOTION TO DISMISS**

Having reviewed and considered all the briefing filed with respect to President Donald J. Trump and Secretary of State Marco Rubio's (collectively, "defendants") Motion to Dismiss (Dkt. 18, "Motion"), the court finds that oral argument is not necessary to resolve the Motion, see Fed. R. Civ. P. 78(b); Local Rule 7-15; Willis v. Pac. Mar. Ass'n, 244 F.3d 675, 684 n. 2 (9th Cir. 2001), and concludes as follows.

## BACKGROUND

The Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1101, et seq.,[1] authorizes the issuance of visas to three broad categories of immigrants: family-based, employment-based, and diversity. See 8 U.S.C. § 1151(a). To initiate the process for a family-based visa, a United States citizen or lawful permanent resident files a Form I-130 ("Petition for Alien Relative") with the United States Citizenship and Immigration Services ("USCIS") on behalf of their beneficiary relative. See

[1] Unless otherwise indicated, all statutory references are to Title 8 of the United States Code and all Rule references are to the Federal Rules of Civil Procedure.

8 U.S.C. § 1154(a); 8 C.F.R. § 204.2; 9 Foreign Affairs Manual ("FAM") § 504.2-2(A)(a)(1). If the petition is approved, the beneficiary relative is able to begin the process of formally applying for a visa by submitting a Form DS-260 ("Online Immigrant Visa and Alien Registration Application"). See 9 FAM §§ 504.1-2 (a)(1), (b)(2)(b). The application is processed by the National Visa Center, which determines if the applicant has submitted all necessary documentation and paid the required fees. See 9 FAM § 504.1-2 (b)(2). If the applicant satisfies the requirements, the National Visa Center schedules the applicant for an interview with a consular officer at a United States embassy or consulate. See 22 C.F.R. § 42.62; 9 FAM § 504.4-5(B)(1)(a)(2). Following the interview, the consular officer must either issue the visa or refuse it under applicable law. See 22 C.F.R. § 42.81(a). If a consular officer determines that additional information is required from the applicant or that a "Security Advisory Opinion" is necessary to determine an applicant's eligibility, the officer must refuse the application under 8 U.S.C. § 1201(g) ("§ 221(g)"). See 9 FAM § 504.11-3(A)(6)(a).

**PLAINTIFFS' ALLEGATIONS**

On June 4, 2025, President Trump issued Presidential Proclamation No. 10949,[2] 90 Fed. Reg. 24497 (June 10, 2025), titled "Restricting the Entry of Foreign Nationals to Protect the United States from Foreign Terrorists and Other National Security and Public Safety Threats" ("PP 10949"), which fully or partially restricts entry into the United States for individuals from 19 countries, including Afghanistan, Iran, Somalia, Yemen, and Cuba. (See Dkt. 7, First Amended Complaint ("FAC") at ¶¶ 213-16). On June 7, 2025, the U.S. Department of State ("State Department") implemented a "No Visa Policy" which fully or partially suspended the issuance of visas to individuals subject to PP 10949 who were otherwise eligible for visas. (See id. at ¶¶ 3, 219-21).

Plaintiffs are 22 U.S. citizens or lawful permanent residents ("plaintiffs") who are petitioners for approved immigrant visa applications filed on behalf of 46 spouses, children, or siblings

---

[2] Section 212(f) of the INA, 8 U.S.C. §1182(f), authorizes the president, by proclamation, to "suspend the entry of all aliens" who he finds "would be detrimental to the interests of the United States[.]"

("beneficiary plaintiffs"). (See Dkt. 7, FAC at ¶ 1); (Dkt. 14, Notice of Dismissal); (Dkt. 20, Notice of Dismissal). According to plaintiffs, they have completed all administrative requirements for receiving their visas, including submitting all associated evidence and paying all required fees. (See Dkt. 7, FAC at ¶ 9). They allege that, with one exception, all beneficiary plaintiffs attended immigrant visa interviews with a consular officer, (see id. at ¶ 235), and that their visa applications were subsequently refused under INA § 221(g) for administrative processing. (See id. at ¶¶ 10 n. 1 & 236). In addition, some plaintiffs received refusals – after PP10949 was issued – pursuant to INA § 212(f). (See id. at ¶ 10 n. 1).

Plaintiffs assert the following claims: (1) PP 10949 is unlawful based on the nondelegation doctrine and is in violation of the separation of powers (Count One); (2) the "No Visa Policy" violates the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 706(2)(A) & (C) (Counts Two and Three); and (3) defendants are unlawfully withholding final adjudication of plaintiffs' immigrant visa applications (Counts Four through Six). (Dkt. 7, FAC at ¶¶ 316-92). Plaintiffs request declaratory and injunctive relief to compel defendants to adjudicate their applications. (Id. at Prayer for Relief).

## LEGAL STANDARDS

I. RULE 12(b)(1).

In reviewing a motion to dismiss under Rule 12(b)(1), the court begins with the principle that "[f]ederal courts are courts of limited jurisdiction." Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377, 114 S.Ct. 1673, 1675 (1994). The courts are presumed to "lack jurisdiction unless the contrary appears affirmatively from the record[.]" DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 342 n. 3, 126 S.Ct. 1854, 1861 n. 3 (2006) (internal quotation marks omitted). Because jurisdiction is a preliminary issue, "a federal court generally may not rule on the merits of a case without first determining that it has jurisdiction[.]" Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp., 549 U.S. 422, 430-31, 127 S.Ct. 1184, 1191 (2007). The burden of establishing the existence of subject matter jurisdiction "rests upon the party asserting jurisdiction[.]" Kokkonen, 511 U.S. at 377, 114 S.Ct. at 1675.

"Rule 12(b)(1) jurisdictional attacks can be either facial or factual." White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000). "The district court resolves a facial attack, as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." Leite v. Crane Co., 749 F.3d 1117, 1121 (9th Cir. 2014).

II. JOINDER OF PARTIES.

Under Rule 20, persons may join in one action if "they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences" and "any question of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20(a). Even if these requirements are met, the "district court must examine whether permissive joinder would comport with the principles of fundamental fairness or would result in prejudice to either side." Visendi v. Bank of Am., N.A., 733 F.3d 863, 870 (9th Cir. 2011) (internal quotation marks omitted). "If the test for permissive joinder is not satisfied, a court, in its discretion, may sever the misjoined parties, so long as no substantial right will be prejudiced by the severance." Coughlin v. Rogers, 130 F.3d 1348, 1350 (9th Cir. 1997) (citing Fed. R. Civ. P. 21).

## DISCUSSION

I. JUSTICIABILITY.

Defendants contend that plaintiffs' claims are not justiciable under the doctrine of consular nonreviewability. (See Dkt. 18, Motion at 11-14) (citing 8 U.S.C. § 1252; 6 U.S.C. § 236(f)). The court is unpersuaded. The doctrine of consular nonreviewability provides that federal courts cannot review the decision of a consular officer to deny an immigrant visa. See Dep't of State v. Muñoz, 602 U.S. 899, 908, 144 S.Ct. 1812, 1820 (2024). "[T]he doctrine of consular nonreviewability is not triggered until a consular officer has made a decision with respect to a particular visa application." Nine Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the United States v. Kerry, 168 F.Supp.3d 268, 290 (D.D.C. 2016) (emphasis omitted). However, suits challenging "the authority of the consul to take or fail to take an action" are subject

to judicial review. Patel v. Reno, 134 F.3d 929, 931-32 (9th Cir. 1997).

Here, plaintiffs do not challenge a final decision, but rather, consular officials' refusal to issue a decision on plaintiffs' visa applications. (See, e.g., Dkt. 7, FAC at ¶¶ 245-51). Courts have explained that "refusal for administrative processing is not a final decision and therefore does not discharge the agency's obligation to adjudicate visa applications." Aminzadeh v. Blinken, 2024 WL 3811153, *4 (C.D. Cal. 2024) (emphasis omitted); see Andalib v. United States, 2024 WL 685945, *5 (C.D. Cal. 2024) ("Courts have consistently recognized that where the application is still undergoing administrative processing, even where a refusal has been relayed, the decision is not final.") (internal quotation marks omitted). As such, "[b]ecause Plaintiffs challenge the delay in processing Plaintiffs' visa application and not a substantive, final decision, the consular nonreviewability doctrine is inapplicable here[.]"[3] Mobayen v. Blinken, 780 F.Supp.3d 969, 983 (C.D. Cal. 2025).

Finally, defendants' reliance on 8 U.S.C. § 1252 and 6 U.S.C. § 236(f) is similarly unavailing. Section 1252 governs judicial review of removal orders for non-citizens, and 6 U.S.C. § 236(f) states that there is no private right of action to challenge the grant or denial of a visa. See 8 U.S.C. § 1252; 6 U.S.C. § 236(f). As explained above, there has been no final decision regarding plaintiffs' visas.

## II. NONDELEGATION DOCTRINE.

Defendants contend that plaintiffs' first cause of action must be dismissed because the nondelegation doctrine does not apply in the field of foreign affairs. (See Dkt. 18, Motion at 16-17). The nondelegation doctrine "bars Congress from transferring its legislative power to another branch of Government." Gundy v. United States, 588 U.S. 128, 132, 139 S. Ct. 2116, 2121 (2019). "[S]ince 1935, the Court has uniformly rejected nondelegation arguments and has upheld

---

[3] Plaintiffs allege that, in addition to § 221(g) refusals for administrative processing, some plaintiffs received refusals pursuant to § 212(f) following the issuance of PP10949. (See Dkt. 7, FAC at ¶ 10 n. 1). Given that all plaintiffs received § 221(g) refusal notices, (see Dkt. 7, FAC at ¶ 10 n. 1), the court need not address the applicability of consular nonreviewability to § 212(f) refusals. See Lashkari v. Rubio, 2026 WL 1625373, *3 (N.D. Cal. 2026) (noting split on whether a § 212(f) refusal is a final decision for purposes of consular nonreviewability).

provisions that authorized agencies to adopt important rules pursuant to extraordinarily capacious standards." Id. at 148-49, 139 S. Ct. at 2130-31 (Alito, J., concurring in judgment). A delegation is constitutional "so long as Congress . . . set[s] out an 'intelligible principle' to guide the delegee's exercise of authority[,]" which is "not [a] demanding" standard. Id. at 145-46, 139 S.Ct. at 2129. As such, nondelegation challenges face a very high bar, and the court is skeptical that plaintiffs have met that bar here. See, e.g., Noori v. Rubio, 2025 WL 3691400, *5 (C.D. Cal. 2025) (dismissing nearly identical nondelegation claim relating to PP 10949, and stating that the relevant issue for plaintiffs who had their visa applications refused was the "No Visa Policy," not PP 10949.). Nevertheless, the court will give plaintiffs an opportunity to amend their first cause of action.

## III. SEVERANCE.

Plaintiffs allege that venue is proper in the Central District of California because eight of the plaintiffs reside in the District. (Dkt. 7, FAC at ¶ 23). Citing to Coughlin, defendants contend that the plaintiffs who do not reside in this District have been erroneously joined to this action, and the court should sever and dismiss those plaintiffs. (Dkt. 18, Motion at 8); see Coughlin, 130 F.3d at 1350-52 (affirming severance of plaintiffs in immigration action because they did not allege a systematic pattern of events or policy of delay). The court agrees with defendants as to Counts Four through Six. These claims allege unlawful withholding and unreasonable delays in plaintiffs' visa adjudications, (see Dkt. 7, FAC at ¶¶ 343-392), and do not arise out of the same transaction or occurrence because plaintiffs' applications "were submitted and processed at different times and places, have been pending for various lengths of time, and necessarily depend on the fact-specific background of the applicant." Ariani v. Blinken, 2024 WL 7084246, *10 (C.D. Cal. 2024); see Coughlin, 130 F.3d at 1351 (explaining that "what may constitute undue delay in one case may not be so in another case" and "each applicant or petitioner presents a different factual situation"); see, e.g., Asgari v. USCIS, 2023 WL 6785801, *4-5 (C.D. Cal. 2023) (holding that joinder of plaintiffs who filed immigration petitions at different times and resulted in different interactions with the agency was improper). Adjudicating these claims together "would impose a significant burden on the [c]ourt and Defendants," Badvipour v. Blinken, 2025 WL 855753,*7

(C.D. Cal. 2025) , as it would require 46 applications of the factors outlined in TRAC v. FCC, 750 F.2d 70 (D.C. Cir. 1984). Further, severance will not prejudice any of plaintiffs' substantial rights because they "remain free to pursue their claims individually." Visendi, 733 F.3d at 871.

Defendants rely on the same severance arguments for Counts One through Three, but their contentions are unavailing with respect to those claims. Unlike in Coughlin, plaintiffs satisfy the first prong of the Rule 20 test for Counts One through Three because they allege "that their claims arise out of a systematic pattern of events and, therefore, arise from the same transaction or occurrence[,]" see id. – that is, PP10949 and the "No Visa Policy." (See Dkt. 7, FAC at ¶¶ 268-301). In addition, there are common questions of law or fact relating to the State Department's suspension of immigrant visa applications under the "No Visa Policy."[4] See, e.g., Badvipour, 2025 WL 855753,at *6 (finding plaintiffs' claims regarding visa applications were "unified by shared legal and factual issues stemming from" specific state department policies and practices). "Addressing these claims jointly serves the interest of justice, promotes judicial economy, and avoids other inefficiencies of litigating duplicative issues in separate proceedings." Id.

In conclusion, the court finds that plaintiffs are properly joined under Rule 20 as to Counts One through Three,[5] but will grant defendants' request to sever plaintiffs' claims as to Counts Four through Six.

## CONCLUSION

Based on the foregoing, IT IS ORDERED THAT:

1. Defendants' Motion to Dismiss **(Document No. 18)** is **granted in part** and **denied in**

---

[4] The FAC seems to allege that several plaintiffs had their visa applications refused prior to the issuance of PP 10949 and the implementation of the "No Visa Policy," (see, e.g., Dkt. 7, FAC at ¶¶ 27-28) (alleging that plaintiff Azardokht Meraji's visa application was refused after a 2022 interview), and that only "some Plaintiffs received 212(f) refusals" pursuant to that policy. (See Dkt. 7, FAC ¶ 10 n. 1) (emphasis added). In the next version of the complaint, plaintiffs should allege the dates on which their visa applications were refused, demonstrating the connection to the "No Visa Policy."

[5] At this time, the court will not address defendants' substantive arguments regarding Counts Two and Three. (See Dkt. 7, FAC at ¶¶ 325-342). In preparing an amended complaint, plaintiffs shall carefully evaluate the contentions set forth in defendants' Motion as well as plaintiffs' individual factual allegations.

**part** as set forth in this Order. The FAC is **dismissed with leave to amend** as to Counts One, Two, and Three. Counts Four, Five, and Six are dismissed **without prejudice** to plaintiffs refiling those claims in separate actions in the appropriate venues.

2. Plaintiffs shall file a second amended complaint, attempting to cure the deficiencies set forth above, as well as the other alleged defects outlined in defendants' Motion, or a Notice of Intent to Stand on First Amended Complaint ("Notice of Intent"), no later than **October 2, 2026**. See WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1135-36 (9th Cir. 1997) ("Unless a plaintiff files in writing a notice of intent not to file an amended complaint, such dismissal order is not an appealable final decision. In a typical case, filing of such notice gives the district court an opportunity to reconsider, if appropriate, but more importantly, to enter an order dismissing the action, one that is clearly appealable."). The court expects that defendants will agree to any amendments that will or attempt to cure the alleged defects.

3. The second amended complaint must be labeled "Second Amended Complaint," filed in compliance with Local Rule 3-2 and contain the case number assigned to the case, i.e., Case No. CV 25-8886 FMO (PDx). In addition, plaintiffs are informed that the court cannot refer to a prior pleading in order to make their Second Amended Complaint complete. Local Rule 15-2 requires that an amended pleading be complete in and of itself without reference to any prior pleading. This is because, as a general rule, an amended pleading supersedes the original pleading. See Ramirez v. Cnty. of San Bernardino, 806 F.3d 1002, 1008 (9th Cir. 2015) ("It is well-established in our circuit that an amended complaint supersedes the original, the latter being treated thereafter as non-existent. In other words, the original pleading no longer performs any function[.]'") (citations and internal quotation marks omitted).

4. Plaintiffs are cautioned that failure to timely file a Second Amended Complaint or Notice of Intent shall result in this action being dismissed without prejudice for failure to prosecute and failure to comply with a court order. See Fed. R. Civ. P. 41(b); Link v. Wabash R.R. Co., 370 U.S. 626, 629-30, 82 S.Ct. 1386, 1388 (1962); Edwards v. Marin Park, Inc., 356 F.3d 1058, 1065 (9th Cir. 2004) ("The failure of the plaintiff eventually to respond to the court's ultimatum – either by amending the complaint or by indicating to the court that it will not do so – is properly met with the

sanction of a Rule 41(b) dismissal."); Ferdik v. Bonzelet, 963 F.2d 1258, 1260-63 (9th Cir. 1992) (affirming dismissal for failure to file amended complaint as ordered by district court).

5. Defendants shall file their Answer to the Second Amended Complaint or a motion pursuant to Fed. R. Civ. P. 12 no later than **October 16, 2026**.

6. In the event defendants wish to file another motion to dismiss, then counsel for the parties shall, on **October 9, 2026, at 10:00 a.m.**[6] meet and confer in person, via video, or telephonically to discuss defendants' motion to dismiss. Defendants' motion must include copies of all meet and confer letters as well as a declaration that sets forth, in detail, the entire meet and confer process (i.e., when and where it took place, how long it lasted and the position of each attorney with respect to each disputed issue that will be the subject of the motion). Failure to include such a declaration will result in the motion being denied.

Dated this 22nd day of September, 2026.

/s/
Fernando M. Olguin
United States District Judge

[6] Counsel may agree to meet and confer at another time without seeking court approval for such an agreement.